UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 20-80087-CR-SMITH

UNITED STATES OF AMERICA,

v.

DWIGHT CASTALDI,

        Defendant.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD VARIANCE

COMES NOW, the United States of America, hereby files this response to the defendant's sentencing memorandum and request for downward variance, objects to the same and states as follows:

Dwight Castaldi, a 45-year-old former supermarket deli clerk (PSR ¶160), was not a strapping, young, 16-17 boy, with model-esk hair and physical prowess; he only pretended to be one on the Internet. From at least as early as 2008, Castaldi, engaged in numerous "relationships" with a 13-year-old girl (PSR ¶ 5), a 13/14 year old girl (PSR ¶ 19), an 8th/9th grade girl (PSR ¶ 26), a 15-year-old girl (PSR ¶ 39), a 16-year-old girl (PSR ¶ 57), and a 12-year-old girl (PSR ¶ 64), while pretending to be a 16 or 17 year old boy, with model-type features, always willing to listen, and always ready to say the right. For years, Castaldi preyed on young girls for his own personal and sexual desires. Castaldi victimized them. He convinced himself he was in love with them, and they with him, all the while gaining their trust, admiration and affection, so that: when he talked to the victims sexually, they obliged; when he asked the victims for pictures, they acquiesced; and, when he asked to receive nude and masturbatory pictures of the victims, they produced the same. Little did they know, they were communicating with a man two or three times

their age; little did they know they were not in a monogamous relationship; little did they know they were victims of 45-year-old Dwight Castaldi.[1]

Federal District Judge John R. Adams, in *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), used a quote attributed to Nelson Mandela: "There can be no keener revelation of a society's soul than the way in which it treats its children." *Id.* at 847. The Defendant's conduct was disturbing and designed to prey on young girls for his own sexual desires. The Defendant's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a sentence of at least 30 years. Regardless of any guideline calculation, the aggravating factors in this case far outweigh any mitigating factors in favor of a downward variance and demand a just and powerful sentence.

## CALCULATION OF THE ADVISORY GUIDELINE RANGE

The advisory sentencing guideline range, as calculated in the PSR (DE 35), per Section 2G2.2 of the Sentencing Guideline Manual, is Life imprisonment because the total offense level is 43 and the criminal history category is II (PSR ¶¶ 133, 137). The defendant has objected to the criminal history category (DE 32)[2]. The guidelines calculation is a bit convoluted (albeit correct) because the defendant has been convicted of three (3) types of charges that are covered by three (3) different guidelines.

First, Castaldi's activity in soliciting Minor Victim 3 (MV3), a 15-year-old girl, through Kik, Facebook, Google, engaging in a Dominant Daddy / Little Girl (DD/LG) lifestyle, had a base offense level of 28 pursuant to U.S.S.G. § 2G1.3 (PSR ¶ 119). His offense level was enlarged because Castaldi was at least 10 years older than MV3 (PSR ¶ 120) and he used a computer to

---

[1] Without restating the facts of this case in their detail, the government adopts the facts of the Probation department's presentence investigation report ("PSR") in its entirely and incorporates the same by reference here.

[2] The guideline range would not change if the defendant's criminal history category was I.

commit the crime (PSR ¶ 121) for an adjusted offense level (AOL) of 32 (PSR ¶ 125). In fact, Castaldi was 28 years older than MV3, when he described how he wanted to have sex with her, including "throat fucking" (PSR ¶ 34) and exchanged gifts with her (PSR ¶ 36). Castaldi himself said, "'out of all of [the girls], I probably cared for her the most.' The defendant said his feelings were genuine, if not misplaced." (PSR ¶ 40).

Second, Castaldi's activity in producing child pornography of Minor Victim 2 (MV2), a teenaged girl who, at Castaldi's request, produced dozens of photographs of her pubic region when she was 14 years of age, generated a base offense level of 32 pursuant to U.S.S.G. § 2G1.1 (PSR ¶ 113). His offense level was enlarged because MV2 was less than 16 years of age at the time of the offense (PSR ¶ 114) for an AOL of 34 (PSR ¶ 118). In fact, the encounter with Castaldi, whom MV2 learned was not 17 or 18 as he purported to be, left MV2 so distraught that when interviewed by the FBI years later, she could not even say his name (PSR ¶ 24).

This brings us to primary guideline used in this case, U.S.S.G. § 2G2.2, attributable to Counts 1, 4, 5, 6, and 7, under the charge of distribution of child pornography. Beginning with a base offense level of 22 (PSR ¶ 102), Castaldi's AOL rose to 46 (PSR ¶ 112) because he:

- possessed child pornography of children under 12 (2 levels) (PSR ¶ 103);
- distributed the same in exchange for more of the same (5 levels) (PSR ¶ 104);
- possessed exploitation images of toddlers (5 levels) (PSR ¶ 105);
- engaged in a pattern of sexual exploitation by having Minor Victim 1 (MV1) produce child pornography of herself more than once (5 levels) (PSR ¶ 106);
- used a computer (2 levels) (PSR ¶ 107); and
- possessed more than 600 images of child pornography (5 levels) (PSR ¶ 108)[3].

Pursuant to U.S.S.G. § 3D1.4, because the AOL of this group of five counts was more than 9 levels higher than the AOL of Counts 2 or 3, the Combined AOL was 45 (PSR § 129). Castaldi then

---

[3] In fact, he possessed more than 343 images and 190 videos files (PSR ¶ 79) of child pornography.

received a five-level increase pursuant to the U.S.S.G. Chapter 4 enhancement which qualified Castaldi as a repeat and dangers sex offender against minors (PSR § 130) and a 3-level reduction for acceptance of responsibility (PSR §§ 131, 132), for an offense level of 47.  Because 43 is the highest possible offense level, his total offense level (TOL) had to be 43 (PSR § 133).  With any criminal history category, the sentencing guideline range is Life.

Castaldi asked this Court to effectively disregard the sentencing guidelines in his case by imposing a downward variance from the advisory guideline range to a mere 15 to 20 years.  This is not appropriate under 18 U.S.C. § 3553(a)[4] and contrary to Eleventh Circuit case law.

## RESPONSE TO DEFENDANT'S <u>8</u> REASONS FOR VARIANCE

Castaldi identified eight (8) grounds for this Court to vary from the guidelines.  Castaldi would have this Court believe the guidelines are unfair, too strict, and out of touch.  That argument has been made by defendants for decades, and will continue to be made, because child exploitation cases generate some of the higher sentencing guidelines.  Historically, this was not always the case.[5]  But over time, as Congress, the Sentencing Commission, and our Courts have learned more about the dangers of in-person and online child exploiters, the sentencing guidelines have increased.  The defendant noted that Congress and the sentencing commission have been presented

---

[4] The following are the factors outlined in Section 3553(a): (i) The nature and circumstances of the offense and the history and characteristics of the defendant; (ii) The need for the sentence imposed – (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) The kinds of sentences available; (iv) The kinds of sentence and the sentencing range established for the instant offense by the Guidelines; and (v) Any pertinent policy statements issues by the United States Sentencing Commission.  *See* 18 U.S.C. § 3553(a).

[5] The original 2G2.2 Guidelines, entitled, "Transporting, Receiving, or Trafficking in Material Involving the Sexual Exploitation of a Minor," had a base level offense of 13, a two-level increase if the minor was under age 12, and at least a 5-level increase for distribution.  https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/1987/manual-pdf/Chapter_2_E-K.pdf.  In fact, USSG 2G2, Sexual Exploitation of a Minor, had only two guidelines: the former mentioned and production of child pornography which had a base offense level of 25 and a two-level increase if the minor was under age 12.  Oh, how far we have come.

with and offered arguments that the guidelines may need revision. Never once have they decreased the guidelines; if anything, they have added more enhancements, increased the maximum sentences and created more minimum mandatory sentences, all the while trying to keep up with the new dangers cause of online child-exploitation offenders and protect children.

There can be no doubt the "prevention of sexual exploitation and abuse of children constitutes a government objective of *surpassing importance*." *New York v. Ferber*, 458 U.S. 747, 757 (1982) (emphasis added). The *Ferber* Court stated, "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id*. at 758 n. 9. Quite simply, "sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." *Kennedy v. Louisiana*, 554 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

To that end, "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." *United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010). The *Irey* court cited the Senate Report regarding this provision:

> This purpose--essentially the "just desserts" concept--should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense. (quoting S.Rep. No. 98-225, at 75-76, 1984 U.S.C.C.A.N. 3258-59).

*Id.* Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976). This is especially true when, "[c]hild sex crimes are among the most egregious and despicable of societal

and criminal offenses…" *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable).

### I. Being Amenable To Treatment Is Not A Basis To Vary

The Defendant argues that he is willing to attend sex offender treatment and thus should be given a shorter prison sentence to accomplish this (DE 33:1-2). He also notes that he received court-ordered therapy when he was 13-years old. *Id.* at 2. The PSR refers to only one incident in the defendant's life at that age when he was charged with sexual battery (DE 140). The therapy Castaldi attended at that age did not work, as he has continued in his ways, and this Court cannot expect it would work such that he should he afforded a variance. In fact, while in prison, the defendant will be offered therapy. The Bureau of Prisons offers significant treatment for sex offenders at nine (9) of its institutions, some of which include a high intensity 18-month residential treatment program.[6] The Bureau of Prisons has even issued a 31-page statement outlining, specifically, the treatment offered to sex offenders.[7]

### II. U.S.S.G. § 2G2.2 Is *Not* "Problematic" As Applied To Castaldi's Crimes Of Distribution Of Child Pornography.

First, the government would point out that although the 2G2.2 guidelines were used in this case, they contemplated nearly all of the defendant's criminal activity. He was awarded nearly the highest (or the highest) of every single special offense characteristic (SOC) available because his crimes touched the worst possible attributes of child exploitation (PSR ¶ 103-108).

The defendant argues that the guidelines are simply too high because several of the SOC's that increased his offense level by 24, are applied in a majority or "virtually all non-production"

---

[6] https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp
[7] https://www.bop.gov/policy/progstat/5324_010.pdf

cases. DE 33:3, referring to PSR ¶¶ 103, 105, 107, 108. However, <u>this *is* a production of child pornography case</u>. The defendant produced child sexual abuse material: he tricked young girls into feeling they were in love with him and convincing them to produce child pornography of themselves. The guidelines are exceptionally high and nearly every SOC applies because the defendant's crimes were horrible. The guidelines are appropriate because they consider all of the defendant's criminal activity against multiple victims. They also take into account a range of his activity from the age of the children, to his distributing child pornography, to the type he possessed.

Second, the defendant points to the U.S. Sentencing Commission's 2012 "Report to Congress: Federal Child Pornography Offenses" ("2012 Report"), for the proposition that the guidelines for child pornography cases are too severe.[8] While the Commission has asserted its position that *non-production* guidelines warrant revision, it did so while suggesting the current guidelines produce overly sever ranges for some *and* overly lenient ranges for others. *See* 2012 Report xxi. Furthermore, Congress clearly determined not to act on the Commission's Report, and the Commission itself opted not to amend the guidelines despite recognizing its ability to do so. *See Id.* at xviii.

More importantly, the Eleventh Circuit reaffirmed, even after the issuance of the 2012 Report that it "has declined to conclude that the Guidelines governing child pornography are inherently flawed or disproportionately harsh." *United States v. Martinez*, 514 F. App'x 833, 835 n.2 (11th Cir. 2013). Thus, it was not an abuse of discretion to consider even the offense of simple possession of child pornography to be a "serious" one warranting a "significant sentence." *Id*. (quoting *United States v. Wayerski*, 624 F.3d 1342, 1355 (11th Cir. 2010); citing *United States v. Pugh*, 515 F.3d 1179, 1201 n.15 (11th Cir. 2008)).

---

[8] https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal-child-pornography-offenses

A year later the Eleventh Circuit was asked to determine whether a guideline sentence was unreasonable in light of the 2012 Report. *See United States v. Cubero*, 754 F.3d 888 (11th Cir. 2014). Cubero pled guilty to one count of distribution and two counts of possession of child pornography. *Id.* at 890-91. His guideline range was 151-188 months. *Id.* at 891. He argued for a downward variance of 60 months based on his acceptance of responsibility, two dozen character letters, and two mental health professionals who opined regarding his low likelihood of recidivism. *Id.* The district court sentenced him to 151 months' imprisonment.[9] *Id*. at 892.

On appeal, Cubero argued that his guideline sentence was rendered unreasonable by the publication of the 2012 Report. *Id*. at 899. He emphasized that the 2012 Report had supported all of his arguments for a downward variance in that the 2012 Report found that the guidelines for "mine-run, first-offender, no-contact cases" were too harsh. *Id.* The Eleventh Circuit disagreed, noting the 2012 Report did not change the duties of the district court or its discretion. *Id*. at 900. The court emphasized that the sentencing court had the experience to sentence appropriately no matter if a study or several studies say otherwise. *Id.* The court held that the 2012 Report:

> 1) Does not alter the district court's duties to calculate the advisory guidelines range and to impose a sentence after considering the § 3553 factors; 2) does not limit the district court's discretion to determine what weight to give to each § 3553 factor, and 3) does not require the district court to vary from the § 2G2.2-based guideline range.

*Id.* In short, the court held that while the district court could vary based on the defendant's arguments that were also mentioned in the 2012 Report, but it did not have to. *Id.*

---

[9] The district court based its decision on the following facts: 1) he possessed a large collection of images and videos; 2) the type and content of the images; 3) the titles of the images were horrific; 4) images depicted the rape of toddlers; 5) 200 images and 17 videos were saved to CD; 6) he had collected child pornography for at least six months; 7) children were victimized by trading in child pornography; 8) differences existed between the defendant's case and the cases he cited to; 9) sentences from other courts may have been too low; 10) sentencing in child pornography is difficult because of the uniqueness of offenders and their attendant crimes; 11) the particular characteristics of this defendant; 12) the court had discretion to vary and had varied before; 13) a reasonable sentence would be at the high end of the guidelines; 14) nothing in this case convinced the court it should downwardly vary; 15) it would not vary below the guidelines; and 16) the sentence may be severe but it was consistent "within the spirit of what Congress wants." *Id.* at 897.

Thus, at bottom, and as always, the Court is left to consider the defendant's actual offense. Put simply, the defendant's crime is a serious one and should be treated that way. Castaldi did not only distribute child pornography…he made it, produced it, and solicited unsuspecting young teenage girls whom he "catfished",[10] to give themselves over to him. Castaldi searched for child pornography separately online for years using terms like "pictures of child sexual abuse," "illegal cp videos," free young teen rape videos," and "preteen kiddy porn" (PSR ¶¶ 74-75). Five (5) devices attributable to him evidenced child pornography totaling 343 images and 190 videos. And his interest in this material goes back to at least 2011 (PSR ¶¶ 74-75). In an encounter in 2013, after receiving child pornography from a person via email, Castaldi replied, "Damn holy crap. The video was hot. Do you have any videos of fucking?" (PSR ¶¶ 76-78). To receive more, Castaldi sent child pornography he possessed and then received images of almost entirely prepubescent and toddler children exposing their vaginas or being vaginally penetrated (PSR ¶ 78).

The defendant also argues that many, if not most child pornography defendants receive the same SOC enhancements that the defendant did in this case for use of computer, number of images, and the like (DE 33:3-4). The United States Sentencing Commission has had nearly a decade since publishing the 2012 Report to amend the guidelines and has chosen not to. Perhaps, the cure is not to eliminate these SOCs, but in fact to increase the base offense level so that all child pornographers begin with a base offense level of 30 or 32. In fact, with the guidelines as they are, the United States Sentencing Commission allows differently situated defendants to be scored differently. Castaldi's actions in this case touched and accounted for nearly every SOC. He brought that upon himself.

---

[10] Catfishing is a term for a person who pretends to be someone else online. A catfish uses fake photos, and sometimes a false persona, to find friends or romantic partners on the internet. https://www.webmd.com/sex-relationships/signs-catfishing

**III.**   Castaldi Is Not A Hands-On-Offender Like The 2012 Report Examined

The Defendant likewise sighted the 2012 Report for the proposition that most production of child pornography offenders were in fact "hands-on" (i.e., physical touching) offenders who received significant sentences (DE 33: 5-6). He essentially argued that beyond the guidelines being overly harsh, his activities were not a true "production" case because he did not actually touch a child. This argument substantially undermines the intent of the guidelines and our statutes.

First, at least in Florida, if the acts the defendant engaged in online had become hands-on-offenses as well, he would have faced up to 15 years for each act of unforced rape of a child between 12-16 years of age. F.S. 800.04. He would have also faced criminal liability in whatever state he committed the physical sexual act in.

Second, it is important to note that the 2012 Report looked at production convictions from the year 2010 (2012 Report at 250), well before so much of the Internet and so many of the "Apps" that we now know to exist were available, which the Defendant used to commit his crimes in this case.[11] To that end, the 2012 Report tracked data of the production sentences of offenders from 1992 through 2010 and saw an increase from an average sentence of 63.5 months' imprisonment in 1992 to 153.4 months' imprisonment in 2004 (2012 Report at 253). But from 2004 until 2010, after the institution of the PROTECT Act, the <u>average</u> production sentence rose to 282.9 months in 2009. This is not the maximum; it is the average: more than 23 years' imprisonment. What we have learned since then makes clear that an "average" or less than "average" sentence for Castaldi that he requested is not justice.

---

[11] By way of reference, the following applications and websites first came into existence as follows: Kik (2010), Facebook Messenger (2008), Google Hangouts (2013), MyLol (2013), Skype chat (2006), Myspace (2003), iMessage (2011),

In October 2021, the United States Sentencing Commission released its report on Federal Sentencing of Child Pornography Production Offenses (2021 Report)[12]. The 2021 Report looked at 512 offenders sentenced under U.S.S.G. § 2G2.1 in 2019 (*Id.* at 9). The 2021 Report found that in the 15 years since 2005, there has been a 422% increase in the number of production sentencings (*Id.* at 17). As technology became more widely accessible and easier to use, so did the number of offenders become more plentiful. The 2021 Report found that, like Castaldi, more than one-half the offenders qualified for the Repeat and Dangerous Sex Offender Against Minors enhancement, which, notably has more than doubled in the last 10 years (*Id.* at 19).

What had not changed was the "average" sentence imposed over the past 15 years, hovering right around 275-280 months in both 2005 and 2019 (*Id.* at 21). In fact, more than 50% of offenders received some type of downward variance, likely attributable to the fact that so many of them had a sentencing guideline range in the Life cell (*Id.* at 22); thus, anything less than Life imprisonment is a variance.[13]

But what the 2021 Report really looked at was offender's relationship to their victims. The project coded for "(1) the physical *proximity* and relationship between offenders and victims; (2) the offender's *participation* or involvement with minor victims during the production offense; and (3) the offender's *propensity* to engage in child pornography activity or child sexual abuse outside of the instant production offense." *Id*. at 9. Of the 512 cases of child pornography production examined, more than 56% (n=290) cases had one victim, 102 cases had 2 victims, 31 cases had 3 victims, 19 cases at four cases, and 58 cases, *like Castaldi*, had more than four victims (*Id*. at 27) as evidenced in the chart below:

---

[12]https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf

[13] Two of the four cases noted by Castaldi in his motion for downward variance had sentencing ranges in the Life cell (DE 33:7-8).



And much like Castaldi's crimes through the Internet, the 2021 Report, found, "given advancements in technology and social media use by both offenders and minors, close physical proximity is no longer necessary for offenders to produce child pornography. An increasing number of offenders [(nearly 40%)] exploited victims remotely through the internet or the use of mobile technology to produce child pornography" (*Id.* at 29). The 2021 Report noted, "due to technological advancements and the changing nature of production offenses, the largest individual category of child pornography production offenders were internet strangers who met their victims through an online or remote platform (35.4%). Comparatively [to the 2012 Report], only 14.3 percent of offenders in fiscal year 2010 were internet strangers who met their victims online" (*Id.* at 30).

Castaldi fits the upper echelon of online offenders who produce child pornography. He wanted to have an online relationship to sexually violate young teenage girls because it was safe for him (or so he thought). In fact, of the 512 cases of child pornography production examined, the most used methods of production were by smartphone, tablet, or victim self-produced (totaling 83.6%) (*Id.* at 34). The Commission also found that 40% of the production offenders "incapacitated, coerced, or enticed a minor victim, or misrepresented their identity to facilitate the

child pornography production offense" (*Id*. at 37). And Castaldi fit within the unique 7.2% of offenders who misrepresented their age as under 18, as well as the 12% of offenders who provided gifts or incentives to produce of child pornography (*Id*. at 38). To that end, the "average" sentence was around 1 year higher than the mean sentencing average of 275 months only based upon this one category (*Id*. at 49).

Castaldi's similarities to the majority of production offenders only goes so far. Like Castaldi, nearly 70% of production offenders, possessed and distributed non-produced images, and participated in the online child pornography community (*Id*. at 40). However, whereas more than half the offenders had no prior sexual conduct of any kind (*Id*. at 41), Castaldi only failed to travel to California to meet Minor Victim 0 because of the expense of the trip (PSR ¶ 12), and as noted below had one or two sexual experiences with children locally.

The analysis of the 2021 Report makes clear that Castaldi is not a low-end, single victim, short-term offender. He was prolific in his production and enticement, doing so for more than a decade, unchecked, upon at least half-a-dozen victims, until one young girl reported the behavior. He is not the "average" offender. He violated girls for more than a decade, on a multitude of applications, communicating to each of them differently to get them to produce child pornography. And if that was not enough, he engaged with others to share child pornography, trading them as if they were baseball cards (PSR ¶¶ 76-78).

But there was evidence of Castaldi's attempts to harm children he knew aside from whom he met online. The PSR detailed Castaldi's interaction with "A." and "D.", former co-workers of Castaldi at a local supermarket. A., then 15 years' old, advised that in 2019 Castaldi made vulgar statements to her, talked sexually to her and made sexual comments involving children (PSR ¶ 80). In one instance, when Castaldi A. that another co-worker had made sexual comments about her,

Castaldi made a thrusting motion with his hips and said, "I don't know if you've done anything with a guy before. I know some girls like to do stuff with older guys for experience." *Id.* Castaldi denied this (PSR ¶ 88).

D., who a bi-sexual male, advised of an incident in which the defendant accosted him multiple times (PSR ¶¶ 81-82). In 2014, Castaldi made frequent sexual comments toward then 16-year-old D. saying one time, "if you meet me in the bathroom, I can suck you" (PSR ¶ 81). In 2016, when D. was 17 years' old, Castaldi twice kissed D. against his will (PSR ¶ 82). Castaldi was transferred after this incident was reported. *Id.* Castaldi only admitted to investigators that he hugged D. but denied being romantic. (PSR ¶ 88).

Finally, Castaldi had an in-person relationship with a 15 year old girl from Orlando. He was questioned about this during his arrest in Palm Beach Gardens and again while in custody in California. Between both interviews, he admitted meeting this 15-year-old girl on Facebook in 2014 or 2015 by searching for people who went to his school where he had also previously worked. Castaldi admitted driving up to see her in person in 2016 in Orlando, spending several days with her and claimed to only have held hands and kissed, "but there was no touchy feelies." He said they slept on opposite sides of the same bed together. He told investigators that once he found out she was 15, "thank god it didn't get further [laughs] than that."

### IV.     Sentencing Disparities

Castaldi pointed to four (4) cases from within this district where defendants were convicted of either production or enticement, in which his counsel participated in the case, and the courts, despite guidelines ranges of 235-293 months or life, varied to 10, 11, or 30 years' imprisonment (DE 33:7-8). He also noted that three of these cases included multiple incidents of physical sexual contact, which Castaldi denied doing in the case at bar. *Id.*

But perhaps what is more supportive to this Court are cases <u>similar in nature</u> to the defendant's criminal actions. In *United States v. Fye*, 17-CR-14014-DMM (SD Fla. 2017), the defendant plead guilty for enticing children online to produce child pornography, as well as receipt and possession of child pornography. Fye's guideline calculation was nearly identical resulting in a total offense level of 43 and a guideline range of Life. He was sentenced to 300 months imprisonment. In *United States v. Hawks*, 16-CR-14059-DMM (SD Fla. 2017), the defendant plead guilty to enticing three (3) children online to produce child pornography. He plead guilty to that as well as possession of child pornography and was sentenced to 360 months' imprisonment.

The argument that a disparity of sentences exists is a misnomer. In a non-victim case, such as narcotics, gun possession, and the like, a court's attempt to sentence without disparity of similarly situated defendants is much less difficult than in a case where you have multiple victims, each offended against individually by the defendant. Mr. Fye and Mr. Hawks, despite their similarities noted above, were not "Castaldi," and neither were Mr. Schmuhl, Mr. Greenberg, Mr. Beck-Moon or Mr. Richardson, as proposed by the defendant. Castaldi would have this Court believe he was far less culpable or dangerous than these other men. In fact, Castaldi is exceptionally dangerous as he offended against multiple victims for more than a decade, unchecked, using a fake internet identity to solicit, seduce, produce, receive, distribute, and possess child pornography.

**V.**     <u>Registration as a Sex Offender is Not Enough Deterrence</u>

Castaldi asked this court to sentence him to no more than 20 years, in part, because when he is released, he will be marked as a sex offender for the remainder of his life. The purpose of this designation is designed to keep the defendant away from children and prevent him from committing more crimes after he is released. His prison sentence is punishment for his heinous

crimes in this case. The interest of the victims he solicited and produced, as well as the prepubescent children and toddlers in the images he possessed, in a sentence that reflects the seriousness of child pornography offenses, cannot be overstated. His sex offender registration is not a substitute for the prison sentence this Court must impose.

      **VI.**    <u>The Defendant's Age and Familial Support Will Lessen his Recidivism</u>

The defendant claims that if he were released from prison at age 65 (20 years from now), and under supervision for the remainder of his life, along with familial support, he would be at a lower risk to reoffend. He offers no evidence to support this. To the extent that the Court wants to consider risk assessment at all, the single best predictor of whether the defendant will be caught committing a new crime is the age of the defendant. Which means that the longer he is in prison, the older he will be when he gets out, and thus the lower his risk of getting caught committing a new crime. Therefore, the best way to protect the community is the obvious method of incarcerating him for an extended period of time until he is highly unlikely to get caught committing a new crime. The younger he is when he is released, the higher the risk.

Because Castaldi's crimes were committed while using the Internet though, his age is not a deterrent to repeated crimes.[14] He nearly stated as much. When interviewed by the FBI in California on these crimes, and questioned about MV3, he said, "if he were released, and MV-3 contacted him, he would not know how he would react because it might cause him to reengage and reoffend" (PSR ¶ 40).

---

[14] Individuals have been criminally charged in this district related to internet crimes against children at more advanced ages than Castaldi. *See United States v. Jasperse,* 21-CR-80025-KAM (SD Fla 2021) (65 years old when online in Kik chat rooms possessing, receiving and distributing child pornography; sentenced to 60 months BOP); *United States v. Aellis*, 18-CR-80075-RLR (SD Fla 2018) (79 years old when sent child pornography online via email; sentenced to 97 months BOP)

**VII.   The Defendant Plead Guilty During the Pandemic Alleviating the Victim's Need to Testify**

The U.S.S.G. prohibit departures in certain areas and lists five specific and one general circumstance.  Departures are not variances, however the fact that the U.S.S.G. disallows a departure for certain grounds, is certainly suggestive to this Court.  U.S.S.G. § 5K2.0(d)(2)  as a ground for departure the "defendant's acceptance of responsibility for the offense, which may be taken into account only under § 3E1.1."  The PSR has already reduced the defendant's total offense by three levels pursuant to U.S.S.G. § 3E1.1.  His entering a plea early in this case is part of the government will move to dismiss Count 1 at sentencing, which included the higher minimum mandatory sentence of 15 years.  His entering of a guilty plea for whatever reason he chose, does not grant him further reduction.

**VIII.   The Defendant has Agreed to Pay Restitution**

Likewise, U.S.S.G. § 5K2.0(d)(5) would deny as a ground for departure the "defendant's fulfillment of restitution obligations…"  Castaldi is going to agree at sentencing to an amount of restitution in this case.  He has not, as of the time of the plea (and presumably sentencing) paid any restitution to the victims.  Whereas his actual payment of restitution would not be a basis for departure, likewise his simple agreement to pay restitution is not a basis for a departure.  Restitution is required and is a form of punishment.  His agreement to certain amounts of restitution although time saving, is not a ground to vary down from the guidelines.  If it were, every defendant would agree to the any restitution amount, whether or not there was any chance it would be paid.

## CONCLUSION

Wherefore, the United States, requests this court sentence the defendant within the guidelines, and if the Court does vary downward, to not les than 360 months followed by lifetime supervised release, restitution as agreed by the parties, order forfeiture, and apply the appropriate assessments.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By: *s/Gregory Schiller*
GREGORY SCHILLER
ASSISTANT U.S. ATTORNEY
Court ID # A5501096
500 Australian Avenue, Suite 400
West Palm Beach, FL 33401
Phone: (561) 209-1045
Email: gregory.schiller@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 22, 2021, I electronically filed the foregoing document with the Clerk of the Court, and served a copy upon all counsel of record, using CM/ECF.

By:  *s/Gregory Schiller*
Gregory Schiller
Assistant United States Attorney